## WORTHINGTON PUMP & MACHINERY CORPORATION v. TRAYLOR ENGINEERING & MFG. CO.

(District Court, E. D. Pennsylvania. September 26, 1923.)

No. 1927.

1. **Patents ⬤➾197—Assignment not invalidated by clerical error.**

An assignment of a patent is not invalid because of a clerical error therein in giving the office number of the patent.

2. **Patents ⬤➾328—960,231, for rock crusher held valid and infringed.**

The Neidermeyer and Bernhard patent, No. 960,231, for a rock crusher, *held* valid and infringed.

3. **Patents ⬤➾226—Verbal differences in description cannot avoid "infringement."**

Infringement cannot be escaped because there may be verbal differences between the language of the claims and the words in which the infringing thing may be described; but, if a fair description of one is fairly descriptive of the other, so that they may be said to be equivalents in structure and function, there is infringement.

4. **Patents ⬤➾328—1,145,967, for lubricating device for rock crusher, held valid and infringed.**

The Bernard and Sholl patent, No. 1,145,967, for a lubricating device for a rock crusher, *held* valid and infringed.

In Equity. Suit by the Worthington Pump & Machinery Corporation against the Traylor Engineering & Manufacturing Company. Decree for complainant.

Philipp, Sawyer, Rice & Kennedy, of New York City, for plaintiff.
Fraley & Paul, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. An aid, if not the key, to the judicial settlement of any controversy, is often found in a clear view of the situation of the parties and of the attitude of each to the other. The plaintiff is the owner of letters patent issued for a claimed invention, in accordance with which it has been manufacturing and selling stone crushers. The special make thus offered to the trade has enabled the plaintiff to supplant other makes which were upon the market. The advantage thus gained the plaintiff owed to the inventive genius and engineering and constructive skill of the patentees, who were in its employ, and that of its predecessor in title, and from whom the invention had been purchased, and under whose direction and supervision the patented crushers were made.

The patentees left the service of the plaintiff, taking with them other skilled employees, and entered the employ of the defendant and into the management of the defendant company, which now competes for the trade in that make of crushers. The plaintiff, in consequence, is smarting under the imposition of what it feels to be two wrongs. One is that an unjust and unfair inroad is being made upon the trade which it feels belongs to it; the other is that a trespass upon its patent rights is being committed. On the other hand, the situation in the eyes of the defendant and of the patentees is wholly different. As it is thus viewed, the former employees of the plaintiff are in the exercise of the undoubted, and indeed unquestioned, right to engage in trade on their own account or to set up new associations with others, and have the like clear right to make and sell what was known to the art before the invention now owned by the plaintiff was patented, or to get the benefit of further inventions of their own.

There are thus presented, or at least suggested, two possible questions which may arise out of this controversy. One is the offspring of the relations, contractual or otherwise, which the parties bear or have borne to each other; the other springs wholly out of the law of patents. These questions are wholly different and are to be determined by resort to the wholly different principles, doctrines, or policies of the law which apply. To the first the doctrine of estoppel, or some kindred doctrine, applies. Essentially it is that a man may have a right, and yet as against another may not be permitted to be heard to assert it. There may be in the situation which arises something of the thought of unfair competition, because there is always present the thought of unfairness, which should be prevented. A patented right is the right to a monopoly which directly affects, it is true, the individual litigants, but beyond this, although indirectly and yet none the less really, affects the public. It might be that a patentee, who has assigned his patent to another, warranting the validity of the letters, should not be permitted to escape the charge of infringement by setting up the invalidity of the patent for which he had thus vouched. No such assignment, however, nor any conduct on the part of the patentee, would support a judicial finding that the assignee was possessed of the right to a monopoly under the patent law if the letters patent were of no validity. The form of decree proper to be entered in cases presenting these different complaints would differ and the averments of the complaint would likewise differ. The complaint made is of the invasion of the patent rights of the plaintiff. The averments are of an exclusive right under the patent laws to a special field of trade activities and the trespass of the defendant upon that field. The allusions made to the contractual relations of the parties are more for the purpose of creating an atmosphere than to support a right. There is nothing in the issue as made up to which the doctrine of estoppel applies. We go, in consequence, directly to the question of a patent right and its infringement.

### The General Issue.

The defense is a qualified denial of both, in that it is that, if the scope of the claims is made broad enough to embrace the acts of the

defendant, the claims are invalid; if they are so narrowed as to avoid the defense of invalidity, then the defendant does not infringe. The issue thus presented is that of the scope of the claims. There are two patents. The office numbers are 960,231 and 1,145,967. One relates to the mechanism and structure of the crusher proper; the other, to the lubricating device employed. They are known to this record as the "crusher patent" and the "pump or lubricating device patent."

### A Side Issue.

[1] Before passing to the discussion of the main issue, we will notice and dispose of another collateral question which has been raised. This concerns itself with the title of the plaintiff to the letters patent. The title is challenged wholly and solely because of a clerical error in the office number given to the letters in the assignment. Without pausing to set forth the supporting reasons for the ruling made, we content ourselves with a statement of the conclusion reached. This is that the attack upon the plaintiff's title has failed.

### The Crusher Patent.

[2] The defendant meets at its threshold the claim of patentability in the plaintiff's make of crusher by pointing out that the only advance over the prior art asserted in this application is that it describes a "more compact, lighter, and stronger machine" than any which the prior art afforded. This language suggests that the only merit of the advance claimed is in the degree of excellence attained. The point is made, however, by ignoring the fact that this is a statement, not of the invention, but of the commercial objective of the inventor. It has no other bearing upon his claim to invention, but is addressed only to its patentability by meeting the utility requirement. Invention consists, broadly stated, in this: These crushers are used to crush rock. They must be strong, and in consequence have weight. The demand was for crushers of greater and still greater capacity. This demand must be met, and without going into a description of this type of crusher, which would make clear what was done and why it was so done, there resulted larger and still larger and heavier machines, until the practical limit of size and weight was reached. The demand, however, for increased capacity was not satisfied.

Plaintiff's patentees solved the problem thus presented by a bold departure from, and, indeed, in one sense, a reversal of, the general plan theretofore pursued; or, stated in terms of results, they met the demand for increased capacity, but succeeded in avoiding what had theretofore been deemed unavoidable, an increase in size and weight. On the contrary, they very appreciably reduced both, and thus, among other claims to merit, made practicable an extension of the capacity limit which before seemed to have been reached. In a highly developed art, such as that with which we are dealing, any advance made always is, in a real sense, the fruit of the application of engineering and mechanical skill, rather than of the inventive faculty. The wall which separates the two is often thin, and no definition of either can be formulated, by the use of which the presence of the other can always be confidently asserted or denied. There is one test which can be applied,

however, the value of which is recognized. When there is a big commercial inducement to solve any problem which is presented (even though it be one which may ·fairly be described as a mechanical problem), if it confronts those who are highly trained and skilled in the art concerned, and yet the solution is not forthcoming, it is idle to say of the solution, when it does come, especially if it comes along lines not before followed, that it is the product of ordinary mechanical skill.

The very capable solicitors for the defendant, recognizing this general truth, do not deny invention, although disparaging, as was to be expected, the "greatness" claimed for it by the plaintiff. What they do urge, with at least greater plausibility, is that an invention embodied in a particular form of construction should not be so expanded as to embrace other and different particular constructions, founded on principles and suggested by forms of construction which have long been in common use; in other words, that one who brings to an old established art the aid of a particular construction, however meritorious, should not be given to his claim to invention a scope so broad as to bestow upon him a monopoly of the whole art.

This brings us to the point of clash. The claims in issue are 1, 2, 5, 6, 7, and 13. These are all in terms combination claims. This, with the general statements of the application, make it clear that what the inventor claimed was not a new crusher, but a novel form of construction in certain features of a known type of crusher, which (and this is the element of vital importance to plaintiff) would produce the objective results to which his efforts were directed. The task presented to the draftsman of the claims was to set forth a series of combinations of elements of construction, without the employment of one or more of which the result sought could not be reached. It is thus clear, as, indeed, all parties in effect agree, that the real contest here is over the scope to be given the claims. They may be read, as almost any claim may, so as to include nothing more than the particular form of structure described, or they may be read to include anything which in structure and function is the substantial equivalent of what is described.

Any one who deals in a special make of anything which is his own distinctive make, for which he has built up a reputation and a trade, has the right to protection against the goods of another being unfairly palmed off as his. If the distinctive, but merely descriptive and identifying, features of that in which he deals are copied, so as to confuse purchasers, this is evidence from which a finding of unfair competition may be made. If, however, these features are functional, then no monopoly of the right to sell can exist, except through the patent or copyright laws. The whole field of an art may have been so fully occupied that valid letters can issue for nothing more than the special features of a particular make. Such a patent right is little more than a trade-mark right, as there would be no infringement, unless the patented thing had been almost literally copied. This is the kind of a right to which the defendant would restrict the plaintiff. The sole question thus becomes one of infringement, and in this view of the · right of the plaintiff the defendant has not infringed. Questions of

this kind cannot be discussed, except in general terms, within the limits of an opinion.

[3] The attempt of the claims is to describe a mode of construction employed for the purpose of contributing to a result which was novel and is useful, and which in concept and accomplishment made a call upon the inventive faculty. That result was "to provide a more compact, lighter, and stronger machine" than theretofore in use. This objective was attained as proven by the exacting test of acceptance by the trade. It is, of course, true that the patent laws deal, not with abstract principles, nor with general purposes, but with concrete things. The invented thing must be described in terms so definite that it may be produced by following the description given. If, however, another than the patentee without his consent makes something which, in the features of the construction of its parts, in their functions and in the results attained, is substantially the patented thing, infringement cannot be escaped because there may be verbal differences between the language of the claims and the words in which the infringing thing may be described. If a fair description of one is likewise fairly descriptive of the other, so that they may be said to be equivalents in structure and function, there is infringement.

The stress of the argument advanced by the defendant is based upon the proposition that what would be infringement, if later, is anticipation, if earlier. Lowry and others are cited as such anticipations. This goes, of course, to the question of the validity of any broad claim of the patentee to invention. If retorted, however, upon the defendant, the argument may be directed to infringement. The question then becomes this: Would the structure of the defendant, if earlier, be an anticipation of the patented one? There is, in effect, an admission of this. We are thus, however, traveling in more or less of a circle, because we are brought back to the question of whether both structures in their broad features can be found in the prior art. If they cannot, infringement is not really contested. If they are so found, then the question becomes whether plaintiff's special form of construction has been copied by defendant, and we come back to the place at which we started. It is difficult, if not impossible, to keep these questions of validity and infringement, as thus stated, wholly separated, because one melts into the other.

The real question thus becomes one of the special fact features of the case, and its decision calls only for a statement of the findings made. These are validity and infringement.

### The Pump Patent.

[4] Proper lubrication would be seen at a glance to be a most important feature of these machines. The changes made in the crusher part of the machine put out of business the provision made in the structures of the prior art for lubrication. A new method must be devised, or at least some other method employed. The claims in issue are 2, 3, 6, and 7. This patent and the supports to its claim to validity, as also the defense interposed, so much resemble in their legal features the crusher patent and the defense there made, that a discussion of either would be a mere iteration of that of the other. This lubricating

device is one which as an entity was adapted to meet an exigency. It has, of course, a number of parts or features in combination. The several claims ring the changes upon these. After all, however, the combination, as distinguished from a mere assemblage, is a feature in itself which gives to the whole its individuality and character in somewhat the same way. The features of a countenance not only express the man, but distinguish him from his fellows. Viewed separately, all men have all these features in common; and yet, viewed as a whole, a distinguishing individuality is at once seen.

There is a like recognition, and in reverse, in patent law combinations. Identity or difference can be recognized through what is expressed by the combination of features when viewed as a whole, whatever the difference or likeness in the verbal assemblage through which they may be described. This is the identity or difference of which we are in search. If, separated from the combination, single features are compared, substantial identity may not be shown. If each is viewed in its place in the combination, such identity may at once be disclosed. Confused impressions are often received, when the verbiage of a claim is applied to separated features of a structure. The picture will, however, stand out with clearness, when structures are compared in their entirety, and the likeness of features will then be seen, which before was not recognized.

We make the like findings of validity and infringement of this lubricating device patent before made of the crusher patent.

A formal decree, in accordance with the prayers of the bill of complaint. in favor of the plaintiff and against the defendant, with costs, may be submitted.